NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-383

FASTARCHIVER SOFTWARE, LLC & others[1]

vs.

ARCSERVE (USA) LLC & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This dispute arises from a contract between FastArchiver Software, LLC (FastArchiver), and Arcserve (USA) LLC (Arcserve) for the purchase of FastArchiver's assets.  Claiming, among other things, that it did not receive money that was owed under the contract and that the contract was induced by fraud, FastArchiver and its members brought suit against Arcserve and an associated company, Marlin Management Company, LLC (Marlin). On the defendants' motion for summary judgment, a Superior Court

---

[1] Peter Alex, Seda Alex, and Stephen Catanzano.

[2] Marlin Management Company, LLC.

judge dismissed the complaint, and the plaintiffs appeal.  We affirm.[3]

Background.  The following facts are undisputed.  We reserve discussion of other facts as they become pertinent to our analysis.

FastArchiver, Arcserve, and Marlin are all Delaware limited liability companies.  FastArchiver created and developed an e-mail archiving software, which in 2016 Arcserve and Marlin expressed an interest in buying.  Marlin is a venture capital firm that owned an interest in Arcserve, which sold data-protection software.

On October 12, 2016, FastArchiver and Marlin signed a letter of intent for Arcserve to acquire FastArchiver's software for $90,000 plus "contingent consideration in the form of an earn-out."  A final deal was reached on January 30, 2017, through an asset purchase agreement (agreement) signed by FastArchiver and Arcserve.  The agreement provided that Arcserve would purchase FastArchiver's software for $90,000, paid in three installments within sixty days of closing, plus earn-out payments "within the Earn-out Period . . . equal to thirty

_____

[3] After the appeal was docketed in this court, then counsel for Arcserve moved to withdraw on the ground that Arcserve's assets had been assigned and Arcserve had consented to proceeding unrepresented.  The motion was allowed, and no successor counsel entered an appearance or filed a brief on behalf of Arcserve.

2

percent . . . of the Gross Margin [attributable to sales of the software] . . . during [each] Calculation Period."[4] The "Earn-out Period" would end on the date on which the sum of all earn-out payments totaled $3,250,000 (the "Maximum Earn-Out") or on the thirty-six month anniversary of the closing date, whichever was earlier.

Importantly for our purposes, the agreement provided that "[t]he Parties understand and agree that . . . the Earn-out Payments . . . are speculative and subject to numerous factors outside the control of Buyer or its Affiliates"; "there is no assurance that the Seller will receive any Earn-out Payment and none of Buyer or its Affiliates has [sic] promised that any Earn-out Payment would be made"; and "the Parties solely intend the express provisions of this Agreement and the other documents and agreements delivered hereunder at the Closing to govern their contractual relationship." The agreement further provided that, "[f]rom and after the Closing, Buyer and its Affiliates shall have the right to use the Purchased Assets[5] in any way that Buyer deems appropriate . . . and Buyer shall have no

---

[4] The defined terms "Gross Margin" and "Calculation Period" are not pertinent to our analysis.

[5] The agreement defines "Purchased Assets" to include the software and all assets, properties, and rights related to the software.

3

obligation to operate its businesses in order to achieve or maximize the Earn-out Payments . . . or otherwise have any obligation to continue the sales of the Purchased Assets for any period of time following the Closing."[6]  In addition, the agreement contained a general merger clause, which provided that "[t]his Agreement, the Disclosure Schedules, and the documents to be delivered hereunder constitute the sole and entire agreement of the Parties with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter."

Arcserve paid FastArchiver the initial consideration of $90,000 in accordance with the agreement.  Also, pursuant to a separate agreement, Arcserve hired one of FastArchiver's members, Stephen Catanzano, as a consultant to educate Arcserve's sales team about the software.  Ultimately, however, according to Arcserve's calculations, Arcserve did not earn enough revenue from sales of the software during the thirty-six months following the closing for any earn-out payment to be due. Arcserve recorded its calculations in periodic earn-out reports, which it provided to FastArchiver.

---

[6] Arcserve did have an obligation under the agreement not to "take any action with the specific purpose of reducing or otherwise eliminating the Earn-out Payments."

4

In May 2020 the plaintiffs filed the underlying complaint, raising claims of breach of contract and breach of the implied covenant of good faith and fair dealing against Arcserve, and claims of fraud, negligent misrepresentation, violations of G. L. c. 93A, conspiracy, and aiding and abetting against both defendants.[7]  The defendants filed a joint motion for summary judgment, which the judge allowed after a hearing.  This appeal followed.

Discussion.  We review a grant of summary judgment de novo. See Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012). Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving parties, shows that there is no genuine issue as to any material fact and the moving parties are entitled to judgment as a matter of law.  See Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006).  "Only those facts that, if true, provide a basis for a reasonable jury to find for a party are material."  Id.  Where, as here, the nonmoving parties would have the burden of proof at trial, the moving parties can prevail on summary judgment by demonstrating that the nonmoving parties have "no reasonable expectation of

_____

[7] The plaintiffs voluntarily dismissed an eighth claim for breach of fiduciary duty against Marlin.

5

proving an essential element of [their] case." Kourovacilis v.

General Motors Corp., 410 Mass. 706, 716 (1991).[8]

1. Breach of contract. The plaintiffs argue that genuine

issues of material fact exist with regard to its breach of

contract claim, precluding the entry of summary judgment. In so

arguing, the plaintiffs identify seven alleged breaches of the

agreement committed by Arcserve. The plaintiffs make three of

those allegations summarily, with no explanation as to why

summary judgment was improper, so we do not consider them.[9] See

Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628

(2019). Moreover, the plaintiffs have waived their argument

that Arcserve breached the agreement by "fail[ing] to be

---

[8] With respect to which State's substantive law applies to this dispute, we note that the agreement contains a provision stating: "This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction)." Nevertheless, the plaintiffs maintain that Massachusetts law, not Delaware law, governs all of their claims. We can assume, without deciding, that that is correct because the defendants were entitled to summary judgment under Massachusetts law, for the reasons discussed below.

[9] Those allegations are that Arcserve "took action to reduce or eliminate the earn-out or portions thereof," "prohibit[ed] the cross-selling to existing end-users," and "reduc[ed] marketing dollars for the sale of the [software]."

6

solvent" because they did not adequately raise that issue to the judge.  See Carey, 446 Mass. at 285.[10]

We turn to the remaining allegations.  Two are related -- that Arcserve "failed to report sales of the [software]" and "failed to pay [FastArchiver] the 30% earn-out on those sales." In support, the plaintiffs rely solely on an affidavit submitted by Catanzano, in which he asserted that Arcserve "failed to provide earn-out statements and thus failed to disclose sales"; "[t]he earn-out reports provided did not accurately disclose earn-outs on the sales made of the [software]"; "Arcserve provided . . . deceptive and misleading earn-out statements showing no sales"; and "Arcserve lied" when it told him "there were no sales."

This affidavit is insufficient to create a genuine dispute of material fact.  "Where the movant has supported the motion for summary judgment by admissible evidence, a nonmoving party may not rest on unsupported allegations; instead, the nonmoving party must come forward with admissible evidence setting forth specific facts showing that there is a genuine issue for trial." Ortiz v. Morris, 97 Mass. App. Ct. 358, 362 (2020).  Here, Arcserve supported its motion with the earn-out reports, which

_____

[10] The judge wrote that he did not consider the issue because it was "not developed" and the plaintiffs did "not cite to specific supporting evidence within the record."

7

showed its calculations of whether earn-out payments were owed based on revenue from sales of the software. Catanzano's bare assertions that these reports were incomplete or inaccurate and that Arcserve "lied" do not create a disputed issue of fact because the affidavit does not set forth the basis of his knowledge. See id. at 364-365 ("Because it is not based on personal knowledge, the statement in the affidavit is not admissible evidence").

The plaintiffs' last allegation -- that Arcserve breached the agreement by "fail[ing] to be truthful" -- fails as a matter of law. The part of the agreement cited by the plaintiffs is titled "Release by Seller" and imposes no obligations on Arcserve. In arguing otherwise, the plaintiffs point to a clause that states: "provided, however, that nothing contained herein shall operate to release any obligations of Buyer under this Agreement or any claim based on fraud or intentional misrepresentation in connection with the transactions contemplated by this Agreement." But this clause merely preserves FastArchiver's right to bring certain claims; it does not impose any contractual obligation on Arcserve to be truthful. Arcserve's alleged untruthfulness could be a basis for a fraud or misrepresentation claim but does not support the plaintiffs' claim in contract.

2. Breach of implied covenant of good faith and fair dealing. The basis of the plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is that Arcserve "fail[ed] to take action to market and sell" the software, "caus[ing] the unfair result of depriving [the] [p]laintiffs the benefits of the three (3) year earn-out payments." This claim fails as a matter of law. It is well settled in Massachusetts that "[t]he scope of the [implied] covenant is only as broad as the contract that governs the particular relationship" and does not "create rights and duties not otherwise provided for in the contract" (quotations omitted). Chokel v. Genzyme Corp., 449 Mass. 272, 276 (2007). Where the agreement expressly provided that Arcserve "shall have no obligation to operate its businesses in order to achieve or maximize the Earn-out Payments . . . or otherwise have any obligation to continue the sales of the [software] for any period of time following the Closing," the plaintiffs cannot invoke the implied covenant to impose on Arcserve an obligation to the contrary. See id. at 276-278.

3. Fraud and negligent misrepresentation. The plaintiffs' claims for fraud and negligent misrepresentation rest on the same set of essential allegations -- namely, that, to induce the plaintiffs to agree to the earn-out payment structure, the defendants falsely represented that Arcserve was financially sound, had the financial backing of Marlin, and would actively

9

market the software to its customer base, and made false assurances that the plaintiffs would receive the maximum earn-out payment of $3,250,000 because customer demand was so high. In actuality, the plaintiffs allege, the defendants knew "that a significant number of key management personnel were leaving Arcserve," and the defendants had no intent to market the software or pay the plaintiffs any consideration beyond the upfront payment of $90,000.

To prevail on a claim for either fraudulent or negligent misrepresentation, a plaintiff must prove that its "reliance on any such [mis]representation was reasonable and justifiable." Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 474 (2009). The question of reasonable reliance can be decided on summary judgment "where the undisputed facts permit only one conclusion." Id. That is the case here. It "is a rule of long standing" in Massachusetts that "[i]t is unreasonable as a matter of law to rely on prior oral representations that are (as a matter of fact) specifically contradicted by the terms of a written contract." Masingill v. EMC Corp., 449 Mass. 532, 541 (2007). Thus, "if the contract was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically

10

addressed the particular point at issue" (quotations omitted). Id.

The plaintiffs' reliance on any promise by the defendants that they would actively market the software, or on any assurance that sales would be so robust that earn-out payments were guaranteed, was unreasonable as a matter of law because any such reliance conflicted with the terms of the agreement. Again, the agreement provided that Arcserve "shall have no obligation to operate its businesses in order to achieve or maximize the Earn-out Payments . . . or otherwise have any obligation to continue the sales of the [software] for any period of time following the Closing." Moreover, the parties agreed that the earn-out payments were "speculative," that there was "no assurance" that FastArchiver would "receive any Earn-out Payment," and that neither Arcserve nor "its Affiliates ha[d] promised that any Earn-out Payment would be made." These provisions are consistent with the letter of intent signed by FastArchiver and Marlin, which stated that "Arcserve shall have the right to terminate all [FastArchiver] activities at any time at its sole discretion."

In light of these provisions, the plaintiffs could not reasonably have relied on any contrary promises or assurances made by the defendants prior to execution of the agreement, especially where the agreement also stated that the parties

11

intended for its "express provisions . . . to govern their contractual relationship" and that the agreement "supersede[d] all prior and contemporaneous understandings and agreements." That Marlin was not a party to the agreement does not change the result because the falsity of the defendants' purported representations, whether made by Arcserve or Marlin, should have been "readily apparent or 'obvious'" from the terms of the agreement. Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 468 (2003), quoting Restatement (Second) of Torts § 541 (1977). Where the agreement unequivocally stated that earn-out payments were not assured and that Arcserve had no obligation to market the software to achieve or maximize earn-out payments (and indeed could discontinue selling the software at any time), the plaintiffs' reliance on any contrary representations made by the defendants during negotiations was not reasonable as a matter of law. Summary judgment was thus appropriate. See Masingill, 449 Mass. at 542 (where plaintiff "signed her contract knowing that she had not received all of the terms she wanted . . ., she cannot later raise the content of negotiations to contradict what is finally and unequivocally agreed upon in the final version of the contract, without creating the [legally unacceptable] result that the language of the contract simply would not matter any more" [quotations omitted]); McCartin v. Westlake, 36 Mass. App. Ct. 221, 231

12

(1994) ("The deliberate, uncoerced, and businesslike process by which the parties reached final, written agreements cannot be undone merely on the claim, later asserted, that the plaintiffs understood that the commitment and obligations of the parties were otherwise than as stated in the signed contract documents").

4. Remaining claims. The plaintiffs' claim under G. L. c. 93A and their claims for conspiracy and aiding and abetting are derivative of their contractual and tort claims, as they are based on the same underlying conduct. Thus, because the plaintiffs have no viable contractual or tort claims, the remaining claims were properly dismissed. See Go-Best Assets Ltd. v. Citizens Bank of Mass., 463 Mass. 50, 64 (2012); Park Drive Towing, Inc. v. Revere, 442 Mass. 80, 85-86 (2004); Bartle v. Berry, 80 Mass. App. Ct. 372, 383-384 (2011).

Judgment affirmed.

By the Court (Henry, Shin & Brennan, JJ.[11]),

Paul Fettet

Clerk

Entered: May 29, 2025.

---

[11] The panelists are listed in order of seniority.

13