WASTE MANAGEMENT OF MASSACHUSETTS, INC. *vs.* RALPH
B. CARVER, JR., trustee.[1]

No. 93-P-612.

Norfolk. September 14, 1994. - December 8, 1994.

Present: KASS, SMITH, & GILLERMAN, JJ.

*Contract*, Sale of real estate, Rescission. *Real Property*, Purchase and sale agreement, Sale. *Practice, Civil*, Consumer protection case.

A seller's failure to have inquired, before signing a purchase and sale agreement for a parcel of land, of his environmental consultant, whom he had engaged, with the knowledge of the buyer, to investigate the presence of hazardous waste materials on the property, provided a basis for rescission of the agreement, which included a warranty that the seller was "unaware of any hazardous materials . . . on the premises" other than as stated, where the consultant had in fact discovered additional contaminants on the property before the agreement was signed. [697-699]

In a civil action in which summary judgment was granted in favor of the plaintiff on its misrepresentation claim, the judge did not err, in the circumstances, in ruling for the defendant on the plaintiff's G. L. c. 93A claim. [699-700]

CIVIL ACTION commenced in the Superior Court Department on May 29, 1990.

Motions for summary judgment were heard by *Roger J. Donahue*, J., and the case was heard by *Patrick F. Brady*, J.

*James J. Dillon* for the plaintiff.

*James M. Hughes* for the defendant.

GILLERMAN, J. This dispute arose out of an August 16, 1989, purchase and sale agreement between the plaintiff as buyer and the defendant as seller of a parcel of land in Avon. The purchase price was $1,650,000, the closing date was January 2, 1990, and the plaintiff put down a deposit of

---

[1] Of Transport Properties Trust.

$150,000. A judge of the Superior Court allowed the plaintiff's motion for summary judgment on those counts of its complaint which sought the return of its deposit. A second judge of that court, after trial on the plaintiff's count claiming a violation of G. L. c. 93A, concluded that there was no violation. Both parties have appealed. We affirm.

1. We first review the allowance of the motion for summary judgment, looking only to the documents before the motion judge. The purchase and sale agreement was drafted by the defendant and contained the following clauses concerning warranties:

> "25. The buyer acknowledges that the buyer has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations made by . . . the seller: (1) *As of this date* all building systems including without limitation, the heating, ventilating and air conditioning systems are in good working order; (2) Seller is unaware of any hazardous materials or solid waste on the premises other than described in [Rider A]." (Emphasis added.)

Paragraph 32, contained in the rider, provided:  ·

> "Both parties acknowledge that approximately 700 to 1,000 yards of diesel-contaminated soil presently exist on the property which will be removed by buyer, either before or after closing, at its expense[]. If, however, buyer determines in good faith and with reasonable estimates that it will incur costs in excess of $125,000.00 to remove such contaminants, it may decline to perform under this agreement and neither party shall have any further rights or obligations hereunder. Such determination must be made by buyer prior to closing."

The materials filed in support of, and in opposition to, the motions for summary judgment (both parties filed such motions and oppositions) indicate that the Department of Environmental Quality Engineering (now the Department of Environmental Protection) was concerned about hazardous waste materials on the property. The defendant, who was not knowledgeable in environmental matters, had hired an environmental consulting firm (Hidell-Eyster Technical Services, Inc.) to help with the problems. Hidell-Eyster was instructed by the defendant to cooperate fully with the plaintiff, and the plaintiff was told of the availability of Hidell-Eyster. On June 1, 1988, Hidell-Eyster had prepared a report indicating that diesel contaminants were present and also that there were some problems with ground water.

The June, 1988, report had been given to the plaintiff, and central to the negotiations for the property was the question of the extent of the contamination. Originally, during discussions of a possible lease, the plaintiff had requested a warranty from the defendant that "no hazardous materials are contained in, or located on, the premises, with the exception of approximately 700 to 1,000 yds. of diesel contaminated soil presently on the property." The defendant refused, and the parties settled on the clauses quoted above.

On August 15, 1989, the defendant's consultant, Hidell-Eyster, filed a detailed report with the Department of Environmental Protection. That report, which was based on site tests done several months earlier, showed additional hazardous contaminants — chlorinated solvents — were contained in groundwater samples from monitoring wells on the property. The following day, the defendant signed the purchase and sale agreement, but the evidence before the motion judge showed that the defendant did not receive a copy of his consultant's report until late August or early September.

Meanwhile, the plaintiff's employees continued their investigation of contaminants after the signing of the agreement, and their studies indicated that, with regard to the chlorinated solvents, the property "is thought by [the Department of Environmental Protection] to be a possible contributor or

source." They advised against the purchase of the property. On November 27, 1989, the plaintiff wrote the defendant requesting the return of its deposit.

In granting summary judgment, the judge did not file a memorandum but made a notation on the plaintiff's motion that, after hearing, based on the plaintiff's memorandum and documents attached thereto, there were no material questions of fact, and the plaintiff was entitled to rescission and the return of its deposit. The plaintiff's memorandum was based on a theory of misrepresentation, namely, that the defendant did not disclose the existence of the chlorinated solvents in paragraph 25.

As stated earlier, the August 15 report of Hidell-Eyster was received by the defendant in late August, 1989. No later than November, 1989, the defendant delivered the report to the plaintiff. The defendant acknowledges in his brief that "[t]here of course was no question below that as of late November, 1989, contamination on this site had been discovered beyond the 1,000 yards of contaminated diesel soil." Thus the defendant's paragraph 25 representation, even if it is regarded as "true" as of August 16, was no longer true as of several weeks later. [2, 3]

The defendant dismisses these facts, arguing that he "never represented that there was not contamination beyond that soil. He only represented that he was unaware of any such additional contamination." There are several difficulties with the argument: (i) what the defendant represented on August 16 was "true" only because, before signing the agreement, he had failed to make inquiry of the expert whom he

---

[2] Of course, if Hidell-Eyster was the defendant's agent, then the information in the August 15 report would be imputed to the defendant, see *DeVaux* v. *American Home Assur. Co.*, 387 Mass. 814, 818 (1983), and cases cited, and the August 16 representation in paragraph 25 would have been false. It is true that in his deposition the defendant admitted to the agency, but the defendant's admission was not without some ambiguity, and we must therefore look to additional undisputed or conceded facts.

[3] We also note that paragraph 25 as of the agreement, quoted above, distinguishes between the representations regarding the building systems, which are limited to "this date," and the representation regarding hazardous materials, which has no such limitation.

had hired to be knowledgeable about the subject matter of the representation — contamination at the site; (ii) the plaintiff signed the agreement because it had no reason to believe that the defendant's own expert (whom the plaintiff knew the defendant had engaged) was in possession of information that, had it been told to the defendant on August 15, would have made his representation on August 16 false and that, if told to the plaintiff on August 15 or 16, would have materially affected the plaintiff's position regarding the proposed agreement; and (iii) the defendant's disclosure of the previously undisclosed information occurred only after the plaintiff, relying on the representation, had bound itself to the agreement.

We hold that the undisputed facts of this controversy state a case for rescission. [4] This is not a case of total silence by the defendant, for which the common law provides no remedy. See *Swinton* v. *Whitinsville Sav. Bank*, 311 Mass. 677, 678-679 (1942); *Kannavos* v. *Annino*, 356 Mass. 42, 47 (1969). Here the defendant, because of his own ignorance of the subject matter, had hired expert consultants to collect the data and report the results. The defendant knew, when he signed the August 16 agreement, that Hidell-Eyster had been working on the project for a substantial period of time. When the defendant spoke out and stated that he was unaware of anything other than diesel-contaminated soil, he had not asked Hidell-Eyster whether that was an accurate statement of the conditions at the site.

Just as one cannot — in order to avoid liability as principal for the unauthorized and damaging acts of an agent — " 'purposefully shut his eyes to means of information within his possession and control' . . . having only that knowledge 'which he cares to have,' " *Perkins* v. *Rich*, 11 Mass. App. Ct. 317, 322 (1981), so too, one cannot avoid rescission of an agreement entered into in reliance upon a material representation carelessly made, designed to avoid the discovery of available facts which might belie the representation.

---

[4] We do not consider whether the facts of this case state a claim for damages.

This case is similar to *Kannavos* v. *Annino, supra* at 48 (1969), where Justice Cutter emphasized that if one speaks out regarding a given point of information he is bound to speak honestly and divulge *all* the material facts bearing upon the point that lie within his knowledge. Fragmentary information will not do. Here the defendant spoke out about what he personally knew regarding hazardous materials at the site, but he failed to disclose that he had not inquired of his environmental consultant, Hidell-Eyster, whom he had engaged for the purpose of being fully and wisely informed and who the plaintiff knew was in the defendant's employ.[5] Had he done so, the representation, which both parties knew was a material element of the transaction, could not truthfully have been made. The defendant cannot avoid liability by inviting those with whom he deals to rely on what he "knows" about a subject under negotiation, while deliberately eschewing information within his control and that bears on that subject. There was no error in the allowance of the plaintiff's motion for summary judgment and the denial of the defendant's motion for summary judgment.

2. There remains the plaintiff's c. 93A claim, which was adjudicated adversely to the plaintiff after a bench trial. The trial judge was entirely free to reach a decision different from that reached by the motion judge because of principles analogous to those stated in *Chamberlayne Sch.* & *Chamberlayne Jr. College* v. *Banker*, 30 Mass. App. Ct. 346, 353 (1991), and *Wyler* v. *Bonnell Motors, Inc.*, 35 Mass. App. Ct. 563, 567-568 (1993), as well as for the reason that the papers before the motion judge were different from the detailed testimony before the trial judge. We have reviewed the record, and we see no basis for concluding that any of the findings was clearly erroneous, nor was there any error in the judge's rulings of law. He concluded, as do we, that "in a complex factual and legal entanglement such as this, it would be grossly unfair to bring down the potent weaponry

---

[5] The plaintiff cannot be faulted for having failed to investigate the truth or falsity of the defendant's representation prior to signing the contract on August 16. *Yorke* v. *Taylor*, 332 Mass. 368, 372-374 (1955).

of chapter 93A upon one who may guess wrongly about what a court will ultimately do with the problem."

*Judgment affirmed.*