MARY LOUISE BRITTON *vs.* DENNIS L. BRITTON.

No. 06-P-275.

Essex. February 13, 2007. - May 11, 2007.

Present: RAPOZA, C.J., CYPHER, & COWIN, JJ.

*Divorce and Separation,* Division of property, Alimony.

In a divorce action, the judge did not err in failing to enforce the parties'
    agreement (in the form of a pretrial stipulation) to sell the marital residence,
    where the parties did not pursue the presentation of their stipulation to the
    judge as an agreement intended to survive the judgment of divorce. [24-27]
The judge in a divorce action did not err in awarding alimony and did not
    abuse his discretion in his assessment of the G. L. c. 208, § 34, factors.
    [27-28]

COMPLAINT for divorce filed in the Essex Division of the
Probate and Family Court Department on January 2, 2004.

The case was heard by *John C. Stevens, III*, J.

*George P. Lordan, Jr.*, for Dennis L. Britton.

*Amy L. Blake* (*Charlene A. Caldeira* with her) for Mary Lou-
ise Britton.

CYPHER, J. Following a judgment of divorce, the husband ap-
peals, claiming that a Probate and Family Court judge erred in
failing to enforce the parties' agreement to sell the marital
residence in Wenham, an agreement he argues survived the
judgment of divorce. The husband also claims error in the award
of alimony.

*Background.* The wife filed a complaint for divorce on Janu-
ary 2, 2004, after a twenty-three year marriage. After a two-day
trial in October, 2005, the probate judge entered a judgment of
divorce nisi on December 5, 2005, on the ground of irretrievable
breakdown of the marriage. At that time, the couple's three
children were twenty-two, twenty, and fourteen years of age. The
provisions for care and education of the two younger children are

not in dispute. The judge divided the total marital assets of $2,459,831 equally. The wife was assigned the equity in the marital residence of $895,000, and the husband was required to transfer all his right, title, and interest in the property to her. The wife was ordered to refinance the mortgage to remove the husband from that obligation, and to be solely responsible for all the related expenses of the property. The award of alimony was for $6,000 per month, effective June 1, 2004, until the death of either party or the wife's remarriage.

The husband filed a notice of appeal on December 30, 2005, and moved to stay the provision that he transfer his interest in the marital residence. The judge denied the motion in a written order. The husband filed another notice of appeal on January 17, 2006. He then sought a stay from a single justice of this court, which was denied on February 10, 2006. The single justice ordered the wife to provide the husband with sixty days' written notice if she intended to sell or transfer the marital residence during the pendency of the appeal.

*Discussion.* 1. *The agreement to sell the marital residence.* The agreement in issue is in the form of a stipulation, among several others, that the parties agreed to on March 22, 2004, prior to trial. The stipulation was hand printed on a court form entitled "STIPULATION OF THE PARTIES." The preprinted court form stated: "It is hereby agreed by the parties . . . that the following stipulation shall be made an order or judgment of this court." Hand printed in the space provided was the following:

> "3. On or before June 30, 2005, the marital home in Wenham shall either be placed on the market for sale or the wife shall buy out the husband for his 50% share of the net equity defined as the then fair market value less mortgage + closing costs. This paragraph shall be incorporated into the final judgment nisi whether by agreement or trial & Shall Survive As An Independent Contract By The Parties."[1]

The husband argues that the judge erred as matter of law in not enforcing the parties' agreement, which he asserts survived

---

[1] The portion of the stipulation beginning with the ampersand was printed in a different hand, partly in the margin, and both parties initialed it.

the judgment of divorce, and that the terms of the agreement should have been harmonized with the judge's property division. He asks that the judgment be reversed and the case remanded for a new division of marital property, taking into account the parties' agreement.

Generally, parties may fashion an agreement that is to survive a divorce judgment. "It is the intent of the parties which controls, see *Moore* v. *Moore*, 389 Mass. 21, 24 (1983), and that intent is determined from the whole agreement." *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 237 (1987). When such an agreement is to be incorporated in the judgment, and to be enforceable, it must be presented to the court, and G. L. c. 208, § 1A, inserted by St. 1975, c. 698, § 2, requires the judge to make findings as to "whether or not the agreement has made proper provisions for custody, for support and maintenance, for alimony and for the disposition of marital property." See *Stansel* v. *Stansel*, 385 Mass. 510, 512-513 (1982).

Our view of the record submitted indicates that the judge was not presented with an agreement that the parties proposed should survive the judgment of divorce, and accordingly, he was not required to order the sale of the marital residence in his property division.

After the stipulation was signed on March 22, 2004, the parties prepared pretrial memoranda on April 7 and 8, neither of which referred to the stipulation. In their memoranda, the parties agreed that the value of the marital home was in dispute, and generally agreed on an equal division of assets. The wife specifically sought to retain the marital residence.

After various motions, and extensions of the trial date, the anticipated date for sale of the marital residence of June 30, 2005, passed. None of these motions directly concerned the sale, with the exception of a complaint for contempt filed by the husband on July 28, 2005, asserting that the wife failed to comply with the order to sell the marital residence. This complaint was not pursued or disposed of until after trial, which began on October 26, 2005.

There was little attention given to the marital residence dur-

ing the trial.[2] In their proposed judgments submitted after trial, the wife proposed that the husband transfer his interest in the marital residence to her, and the husband proposed that the residence be sold pursuant to the prior stipulation. The husband also proposed that the wife be adjudged in contempt for failing to abide by the terms of the March 22, 2004, stipulation.

This record clearly shows that the parties did not pursue the presentation of their stipulation to the court as an agreement intended to survive the judgment of divorce. Moreover, the stipulation as written — "[t]his paragraph shall be incorporated into the final judgment nisi whether by agreement or trial" — appears to require some further agreement of the parties or action at trial to incorporate it into the judgment.[3] "A party is . . . bound by an agreement made in open court and acted on by the judge." *Dalton* v. *Post Publishing Co.*, 328 Mass 595, 599 (1952). See *Dominick* v. *Dominick*, 18 Mass. App. Ct. 85, 89 n.2 (1984) ("stipulations made in open court by the parties or their attorneys and acted upon by the court have been held to be binding on the parties"). Here, there was neither any further agreement nor any action of the parties at trial to preserve the stipulation. Accordingly, the husband's complaint for contempt failed because there was no order to be obeyed.[4] See *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 340 (1990).

---

[2]The wife's counsel informed the judge that the wife had stipulated to the value of the marital residence. The wife testified that she wanted to continue living there. She acknowledged signing the stipulation, but failed either to sell the residence or to buy her husband's share. She recalled being present at a meeting in May or June of 2004 with the husband and both counsel, and it was her intention at that time to stay in the residence. An offer to purchase the residence was made at that meeting, but was rejected by the husband. On cross-examination, the husband stated it was up to the court to decide what would happen with the residence, but he wanted it to be sold.

[3]The wording of the stipulation also lacked the comprehensiveness and precision normally expected in separation agreements. See generally Kindregan & Inker, Family Law & Practice § 50:7 (3d ed. 2002).

[4]Following the judgment nisi entered on December 5, 2005, which assigned the marital residence to the wife, the husband filed a notice of appeal on December 30, complaining, inter alia, that the judge failed to rule on the complaint for contempt. He also moved for a stay of the judge's order that he transfer his interest in the marital property.

The judge issued an order denying the husband's motion to stay on January 9, 2006, in which he stated that the wife asserted that the parties had contemplated that this case would be reached for trial before she was required

An agreement intended to survive a judgment of divorce cannot specifically be enforced without a ruling by the judge that it was "not the product of fraud or coercion, that it was fair and reasonable at the time of entry of the judgment nisi, and that the parties clearly agreed on the finality of the agreement." *Knox* v. *Remick*, 371 Mass. 433, 436-437 (1976). There was no error here.

2. *Alleged error in award of alimony.* Dissatisfied with what he complains is an "irrational alimony figure," the husband asserts that he is required to pay forty percent of his income to the wife as alimony, and that the judge's decision is not reflective of his ability to pay or grounded in the wife's actual need. The husband fails to show any error underlying the judge's order for temporary support on May 24, 2004, or his denial of the husband's motion for reconsideration on June 22, 2004, in which the judge stated that "if the evidence as developed through discovery at trial supports the husband's allegations, the order of May 24, 2004 explicitly permits a retroactive adjustment of the support payments." The husband points to nothing indicating that any evidence was developed at trial that would undermine the judge's award of alimony.

In arriving at the alimony award, the judge considered the length of the marriage, the "middle class to upper middle class station" of the parties, and the wife's present inability to increase her limited income, as the weighty G. L. c. 208, § 34, factors in his decision. Although the alimony award amounts to approximately forty percent of the husband's total gross income, which the judge found to be approximately $179,244 per year, he is left with an income approximately $20,000 higher than the wife's, as well as his share of ownership of the family business and several income-producing investments. The wife, on the other hand, will receive one large cash payment, but nothing else with income-producing potential.[5] The wife's long absence from full-time employment because she was the primary home-

to sell the marital residence, and that the delay in reaching the trial and thus her failure to comply with the stipulation "arose from the unavailability of counsel for the former husband." The judge issued a judgment that the wife was not guilty of contempt, nunc pro tunc to December 5, 2005.

[5]There is no merit in the husband's complaint that he was unfairly forced to

maker and caretaker of the children surely will be a disadvantage in obtaining full-time employment if she chooses to do so.

The "central objective of alimony is, subject to the availability of resources, maintenance of the more dependent spouse in an economic style close to which the spouse had become accustomed during the marriage. *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 623-624 (1986). *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 819 (1985). *Kehoe* v. *Kehoe*, 31 Mass. App. Ct. 958, 959 (1992). . . . [B]ut those cases and . . . authorities . . . are not to be read as necessarily limiting alimony by the dependent spouse's need." *Rosenberg* v. *Rosenberg*, 33 Mass. App. Ct. 903, 904 (1992). We discern no abuse of the judge's discretion in his assessment of the G. L. c. 208, § 34, factors. *Drapek* v. *Drapek*, 399 Mass. 240, 243 (1987).[6]

*Judgment affirmed.*

---

subsidize the wife's living in the large and costly former marital residence. The judge stated in his posttrial order that he determined the alimony award independently of those expenses, and that the husband was not prejudiced by the transfer of the marital residence to the wife.

[6]Two additional issues raised by the husband require little discussion. First, the husband claims that the judge erred in assigning an interest in a property in which the husband held a beneficial and not a present interest. He is one of two beneficiaries of a real estate trust established by his mother. An interest in trust property is part of the husband's divisible estate under G. L. c. 208, § 34, as matter of law. See *Lauricella* v. *Lauricella*, 409 Mass. 211, 213-217 (1991). See also *Ruml* v. *Ruml*, 50 Mass. App. Ct. 500, 511 (2000). The husband has received the present benefit of the property, a residence in Beverly, by living in it, and paying its expenses.

The husband also asserts that the judge failed, as a "reciprocal matter," to require the wife to obtain life insurance, as he was required to do. It was within the judge's discretion to require the husband to maintain a policy of life insurance as security for the payment of alimony that is provided for in the divorce judgment. G. L. c. 208, § 36. Because the wife is under no such continuing obligation, no abuse of the judge's discretion has been shown in not similarly requiring the wife to provide such security.