SUPERIOR COURT 
 
 ERI/INTEGRAL HOLDINGS LLC v. INTEGRAL FUND I INVESTOR, LLC; IIF1 GP, LLC; INTEGRAL DEVELOPMENT LLC; ELJP REAL ESTATE, LLC; EGBERT L.J. PERRY; AND INTEGRAL INVESTMENT FUND LLP

 
 Docket:
 2184CV00217-BLS2
 
 
 Dates:
 May 31, 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
 
 

 ERI/Integral Holdings LLC (“ERI”) made a $12 million non-recourse loan to Integral Fund I Investor, LLC, and IIF1 GP, LLC (the “Borrowers”). The principal plus 15 percent annual interest was to be repaid out of the Borrowers’ share of future distributions from Integral Investment Fund I, LP (the “Fund”), which was the indirect owner and manager of three residential buildings, including the Mission Bay project in San Francisco. The Borrowers would only receive distributions from the Fund, and therefore have an obligation to repay ERI, to the extent that the Fund received distributions from these three projects.
As part of the Loan deal, ERI also received a Non-Recourse Carve Out Guaranty under which Integral Development LLC (the “Guarantor”) is liable for losses resulting from fraud by the Borrowers or the Guarantor.
Egbert L.J. Perry signed the loan agreement on behalf of the Borrowers (in his capacity as Manager of ELJP Real Estate, LLC, or “ELJP”) and signed the Guaranty on behalf of the Guarantor (in his capacity as CEO of the Guarantor).
After Mission Bay sold for less than expected, ERI received a partial repayment of $85,000; it received another $4.5 million out of proceeds from the sale of the two other projects. If Mission Bay had sold for the price reflected in models that the Borrowers had shared with ERI, then ERI would have been repaid in full.
ERI sued the Borrowers, the Guarantor, the Fund, Mr. Perry, and ELJP for fraud and on other theories. Defendants have moved for summary judgment in their favor on all claims. ERI has moved for partial summary judgment as to liability on the claims in Counts I through V, as to all defendants except for the Fund.
The Court will allow in part and deny in part Defendants’ motion for summary judgment, and will deny Plaintiff’s cross-motion.
 
                                                            -1-
 
The summary judgment record shows that ERI has viable claims for intentional fraud and for negligent misrepresentation against the Borrowers. It therefore also has viable claims to enforce the guaranty against the Guarantor (because the guaranty is triggered if the Borrowers engaged in fraud) and to enforce the promissory note against the Borrowers (because the non-recourse provision in the Loan Agreement is not enforceable if there was fraud). But these claims must all be tried; ERI is not entitled as a matter of law to a finding that the Borrowers and the Guarantor are liable under these claims. The Court will therefore deny both sides’ motions for summary judgment as to these claims.
Defendants are entitled to summary judgment in their favor on the remaining claims. The record establishes that Perry, EJLP, and the Guarantor are not liable for fraud, negligent misrepresentation, aiding and abetting the Borrowers’ alleged fraud, or civil conspiracy. It also establishes that none of the Defendants is liable for conversion, for committing unfair or deceptive acts in violation of G.L. c. 93A, § 11, for money had and received or unjust enrichment, or for failing to distribute amounts that should have been paid to ERI.
ERI states, in footnote 1 of its initial memorandum, that “[t]he Fund is a defendant only in Count Six” of the amended complaint, which is the claim for allegedly failing to distribute all available net proceeds from the projects. It was not obvious from reading the amended complaint that the Fund was not also being sued in other counts. ERI is bound by this more definite statement of its claims. See generally Britton v. Britton, 69 Mass. App. Ct. 23, 26 (2007) (party is bound by stipulation or agreement communicated to and acted on by court).
1. Fraud and Negligent Misrepresentation Claims. As part of Count One of the Amended Complaint, ERI has sued the Borrowers, the Guarantor, ELJP, and Perry for intentional fraud as well as negligent misrepresentation.[1]
Defendants’ assertion that ERI did not allege negligent misrepresentation in its complaint is incorrect. Paragraph 52 of the amended complaint alleges that the defendants other than the Fund either “knew the true facts” or, “alternatively, … should have known the true facts.”
In any case, ERI is entitled to press its claims for fraud or misrepresentation without specifying both legal theories in its complaint. See Gallant v. City of
 
--------------------------------------------
 
[1] Somewhat confusingly, Count One is based on five different legal theories, asserting claims for intentional fraud, negligent misrepresentation, conversion, aiding and abetting fraud or misrepresentations, and conspiracy.
 
                                                            -2-
 
Worcester, 383 Mass. 707, 709 (1981) (complaint may allege facts plausibly suggesting that plaintiff has legally viable claim even if complaint does not name correct legal theory); Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass. App. Ct. 479, 487 (1988) (plaintiff may press at trial any legal theory fairly raised by allegations in complaint, even if that theory is not expressly invoked in the complaint).
It follows that a defendant’s motion for summary judgment must be denied whenever the summary judgment record shows that the plaintiff has a triable claim, even if the legal grounds for that claim are not fully specified in the complaint. Ku v. Town of Framingham, 53 Mass. App. Ct. 727, 729–731 (2002) (reversing order granting summary judgment for the defendant). “At the summary judgment stage, a court will look beyond the complaint to the entire record.” Id. at 731.
1.1. Alleged Fraud or Misrepresentations by the Borrowers. Neither side is entitled to summary judgment with respect to the claims for intentional fraud or negligent misrepresentation against the two Borrowers.
In paragraph 11(p) of the Loan Agreement, the Borrowers represented that none of the information that they provided to ERI when negotiating the Loan “contains any material misstatement of fact or omits to state any material fact necessary to make the statements therein, taken as a whole, in light of the circumstances under which they were made, not misleading when made.”
ERI contends that this representation was “false” in at least two ways, both concerning the Mission Bay project. A reasonable jury may agree, and may also find that these alleged misrepresentations were done intentionally, recklessly, or negligently, which is why the Borrowers are not entitled to summary judgment on these claims. But ERI is not entitled to judgment in its favor as a matter of law, which is why it is not entitled to partial summary judgment as to liability on these claims.
1.1.1. Waterfall Model. The Mission Bay project was owned by two special purpose entities, Integral MB N4P3 LLC (the “Integral Sponsor,” which is not a defendant in this action) and AREP III Mission Bay Investor, LLC (the “Argosy Investor”).
ERI contends that the “waterfall” model that the Borrowers provided to show the flow of funds that would result when the Mission Bay project was sold showed that the Integral Sponsor would receive 25 percent of the first
 
                                                            -3-
 
$40 million of net sale proceeds, after the construction loan and other project loans were paid off. That was incorrect, because in fact the other project owner (the Argosy Investor) was entitled to the first $33 million in net proceeds, the Integral Sponsor would receive only 10 percent of the next $10 million in net proceeds, and the Integral Sponsor would then receive 80 percent of any remaining distributable cash.
A reasonable jury could agree with ERI’s interpretation of the Mission Bay waterfall analysis. ERI’s description of what the model shows is consistent with what one can see and conclude by reviewing this spreadsheet model in its native, electronic form.
If the jury understood the Mission Bay waterfall model in the manner suggested by ERI, it would undoubtedly find that this model misrepresented the Fund’s indirect legal rights to share in net proceeds from a future sale of Mission Bay. The Borrowers do not dispute that the Integral Sponsor had no legal right to any portion of the first $33 million in net sale proceeds, because it had agreed to amend the Mission Bay venture’s operating agreement to give that right completely to the Argosy Investor.
A jury might also conclude that the inaccurate representations implicit in the Borrowers’ waterfall model constitute fraud. Fraud involves a “misrepresentation of an existing fact made with knowledge of the falsity of the misrepresentation or with reckless disregard of the actual facts.” Christian v. Mooney, 400 Mass. 753, 764 (1987). The evidence in the summary judgment record could support an inference of intent to deceive or, alternatively, a reckless disregard of the truth when making a misrepresentation through the waterfall model; direct evidence of such intent or recklessness is not required. “A person’s knowledge, intent, or any other state of mind is rarely susceptible of proof by direct evidence, but rather is a matter of proof by inference from all the facts and circumstances in the case.” Gupta v. Deputy Dir. of Div. of Emp. & Training, 62 Mass. App. Ct. 579, 585 n.5 (2004). And an inference “need only be reasonable and possible;” it does not have to be “necessary or inescapable.” Parker v. EnerNOC, Inc., 484 Mass. 128, 132 (2020), quoting Commonwealth v. Kelly, 470 Mass. 682, 693 (2015).
Alternatively, a jury may reasonably conclude that the Borrowers are liable on a theory of negligent misrepresentation, rather than intentional fraud. That is because a jury could find that the Borrowers, in connection with their business transaction with ERI, supplied false information “without exercising ‘reason-
 
                                                            -4-
 
able care or competence in obtaining or communicating the information,’ ” and that ERI reasonably relied on that information and suffered a loss as a result. See Cumis Ins. Society, Inc. v. BJ’s Wholesale Club, Inc., 455 Mass. 458, 471–472 (2009), quoting Restatement (Second) of Torts § 552 (1977).
The Borrowers’ assertion that “ERI should have inquired further” is not a valid defense to the claims of fraud or negligent misrepresentation. “The recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying on its truth,” even if they could have figured out that the representation was false had they “made an investigation.” Yorke v. Taylor, 332 Mass. 368, 374 (1955), quoting Restatement of Torts § 540 (1938); accord Zimmerman v. Kent, 31 Mass. App. Ct. 72, 81 (1991). As a result, ERI “cannot be faulted for having failed to investigate the truth or falsity” of the representations in the waterfall model before signing the Loan Agreement. See Waste Management of Mass., Inc. v. Carver, 37 Mass. App. Ct. 694, 699 n.5 (1994).
Of course, “[t]he person claiming justifiable reliance is ‘required to use his senses, and cannot recover blindly if he relies upon a misrepresentation the falsity of which would be patent to him if he utilized his opportunity to make a cursory examination or investigation.’ ” Collins v. Huculak, 57 Mass. App. Ct. 387, 392 (2003), quoting Restatement (Second) of Torts § 541 comment a (1977).
But Defendants have not presented any evidence suggesting that a cursory review would have made obvious that the Mission Bay waterfall spreadsheet was inaccurate. This is not a case in which representations were contradicted by documents in the plaintiff’s possession. Cf. Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 468–469 (2003). The Argosy Investor obtained its right to the first $33 million in distributable net proceeds in the second amendment to the Mission Bay venture’s operating agreement. The Borrowers did not share that document with ERI until after the Mission Project was sold and the Borrowers needed to explain why ERI would receive almost none of the distributable net proceeds.
1.1.2. Appraisals, Offers, and Market Analysis. ERI made an initial loan of $10 million to the Borrowers in July 2016, and loaned an additional $2 million in November 2016.
As part of the due diligence conducted before the July 2016 closing, ERI asked the Borrowers to provide copies of any appraisals or other valuations of the Mission Bay project. In response, the Borrowers produced an October 2015
 
                                                            -5-
 
broker’s opinion of value in which CBRE concluded that Mission Bay would be worth $107 million when completed and $114 million upon “stabilization,” meaning when certain occupancy or rent generation levels were achieved.
But the Borrowers withheld contrary valuations and information suggesting that Mission Bay could actually be worth much less than that. The Borrowers had, but did not disclose, information or documentation showing that:
o a December 2014 appraisal by CBRE concluded that Mission Bay would be worth $93.3 million when completed and $93.5 million upon stabilization;
o a November 2015 appraisal by CBRE concluded that the project would be worth even less than that, $90.1 million on completion and $91.2 million when stabilized;
o in 2015, while Mission Bay was under construction, the Integral Sponsor and Argosy Investor had received one offer to buy the project for $85 million upon completion, a second offer to buy Mission Bay for $85 million upon stabilization, and a third offer to buy a 51 percent interest based on a $90 million valuation; and
o the Argosy Investor had provided the Integral Sponsor with an analysis concluding that the market for Mission Bay was softening, that all three of these offers were good offers from worthy buyers, and that the project was unlikely to be worth more if they waited to sell later on.
Mission Bay was ultimately sold in August 2017 for $86.25 million. After the construction loan and other project debt was paid off, the Argosy Investor received about $33 million from the sale proceeds and the Integral Sponsor received about $160,000. That enabled the Fund to distribute about $85,000 to the Borrowers, which they paid over to ERI.
A reasonable jury could conclude that the Borrower’s partial disclosure of some information about the likely value of Mission Bay, while withholding contradictory information suggesting that the project was actually worth much less, constituted either intentional fraud or negligent misrepresentation. Though the Borrowers contend that there is no inconsistency between the earlier appraisals and offers (on the one hand) and the October 2015 broker’s opinion of value (on the other), that will have to be resolved at trial.
 
                                                            -6-
 
“[I]ncomplete statements may in some circumstances amount to actionable fraud.” Copley Place Assocs., LLC v. Téllez-Bortoni, 91 Mass. App. Ct. 186, 188 (2017). “Even in an arms-length transaction,” where there otherwise would be no duty of disclosure, “if a party does speak ‘to a given point of information, … [they are] bound to speak honestly and to divulge all material facts bearing upon the point that lie within [their] knowledge. Fragmentary information may be as misleading … as active misrepresentation, and half-truths may be as actionable as whole lies.’ ” Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc., 81 Mass.  App. Ct. 282, 291–292 (2012), quoting Kannavos v. Annino, 356 Mass. 42, 48 (1969).
The Borrowers may be liable for fraud or misrepresentation if they provided partial information about the likely value of Mission Bay but misled ERI by failing to mention that it knew other important facts about materially lower valuations. See Kannavos, supra; Gossels v. Fleet National Bank, 69 Mass. App. Ct. 797, 806 (2006); Waste Management, 37 Mass. App. Ct. at 699. The summary judgment record would support a finding that the Borrowers committed fraud or negligent misrepresentation in this way.
1.2. Alleged Fraud or Misrepresentations by Perry. In contrast, Mr. Perry is entitled to summary judgment on the claims against him for intentional fraud or negligent misrepresentation, because there is no evidence that he participated in making the Borrowers’ alleged misrepresentations. The Court recognizes that when the representative of a business entity “makes a negligent or fraudulent misrepresentation” on behalf of the company, they may be held personally liable in tort. See Skowronski v. Sachs, 62 Mass. App. Ct. 630, 634 (2004); accord Coe v. Ware, 271 Mass. 570, 572–573 (1930). But the summary judgment record contains no evidence that Perry committed any intentional fraud or negligent misrepresentation.
Perry never personally provided ERI with any due diligence materials for the Loan. That is undisputed.
Nor is there any evidence suggesting that Perry directed, controlled, approved, or ratified either giving ERI an inaccurate waterfall model or withholding appraisals or offer valuation information from ERI. Contrast Townsends, Inc. v. Beaupre, 47 Mass. App. Ct. 747, 751 (1999) (“A corporate officer is personally liable for a tort committed by the corporation that employs him, if he personally participated in the tort by, for example, directing, controlling, approving, or ratifying the act that injured the aggrieved party.”).
 
                                                            -7-
 
When Perry signed the Loan Agreement, he was merely certifying on behalf of the Borrowers that the information they had provided to ERI did not contain any material misstatement of fact or omit any material fact. He was not personally ratifying any prior intentional fraud or negligent misrepresentation allegedly committed by other agents of the Borrowers. Cf. Marshall v. Stratus Pharmaceuticals, Inc., 51 Mass. App. Ct. 667, 672-673 (2001) (agent that enters into contract on behalf of “a disclosed principal does not become a party to the contract”) (quoting Porshin v. Snider, 349 Mass. 653, 655 (1965) and Restatement (Second) of Agency, § 320 and comment a (1958)). And there is no evidence that Perry did not believe that Borrowers’ representations in the Loan Agreement were true.
ERI’s rank conjecture that Perry must have been personally involved in causing the Borrowers to make the alleged misrepresentations is not enough to defeat Perry’s motion for summary judgment. “On summary judgment, any inference that could be drawn in favor of the nonmoving party ‘must be based on probabilities rather than possibilities and cannot be the result of mere speculation and conjecture.’ ” Cesso v. Todd, 92 Mass. App. Ct. 131, 139 (2017), quoting McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 706 n.3 (1990); accord Brooks v. Peabody & Arnold, LLP, 71 Mass. App. Ct. 46, 56 (2008).
1.3. Alleged Fraud or Misrepresentations by the Guarantor and ELJP. The alleged false statements by the Borrowers cannot be imputed to the Guarantor or to ELJP, as there is no evidence suggesting that the Borrowers were acting as agents for these separate entities in their dealings with ERI. Neither the Guarantor nor ELJP was a party to the Loan Agreement. Nor is there any evidence that they were involved in any manner in providing due diligence information to ERI.
ERI musters no evidence or argument that the Guarantor or EJLP participated in the Borrowers’ alleged frauds or misrepresentations. Instead, ERI lumps all of the defendants other than the Fund together, referring to them collectively as “Integral,” and treating acts or omissions by any one of these defendants as conduct that implicates all of them. That is not sufficient to defeat summary judgment in favor of the Guarantor and EJLP on the claims for intentional fraud and negligent misrepresentation. One of the “bedrock principles of corporate common law” is that separate corporations or limited liability companies are generally “regarded as separate and distinct entities,” even if there are “relationships between or among them.” Lemos v. Electrolux North America, Inc.,
 
                                                            -8-
 
78 Mass. App. Ct. 376, 381 (2010), rev. denied, 459 Mass. 1103 (2011), quoting Scott v. NG US 1, Inc., 450 Mass. 766, 766 (2008).
2. Conversion Claim. The Borrowers, the Guarantor, EJLP, and Perry are all entitled to summary judgment in their favor on ERI’s conversion claim.
“Conversion is the ‘wrongful exercise of dominion or control over the personal property of another.’ ” Waxman v. Waxman, 84 Mass. App. Ct. 314, 321 (2013), quoting Cahaly v. Benistar Property Exch. Trust Co., 68 Mass. App. Ct. 668, 679 (2007).
To the extent that ERI contends that obtaining a loan through intentional fraud or negligent misrepresentation constitutes conversion, this claim fails as against the Guarantor, EJLP, and Perry (for the reasons discussed in §§ 1.2 and 1.3, above) and is duplicative of the fraud and misrepresentation claim against the Borrowers. Although a party is entitled to assert alternative claims or counterclaims based on different theories of recovery, it is not entitled to assert entirely duplicative claims that are based on the same legal theory. Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 236-237 (1st Cir. 2013) (dismissing duplicative contract claim).[2] For that reason, it is appropriate to grant summary judgment dismissing an “essentially duplicative” claim. See Pielech v. Massasoit Greyhound, Inc., 47 Mass. App. Ct. 322, 327 (1999).
To the extent that ERI contends instead that any of the defendants converted ERI’s loan by using the money for an improper purpose, the conversion claim fails because the Loan Agreement provided only that the Loan proceeds “shall be used by the Borrowers and its Affiliates for general business purposes.” There is no evidence that the defendants used the proceeds for something other than general business purposes.
ERI does not contend there is any other basis for its conversion claim.
3. Conspiracy or Aiding and Abetting Claims. ERI’s claims that Perry, ELJP, and the Guarantor either conspired with the Borrowers to commit fraud or negligent misrepresentation, or aided and abetted the Borrowers’ alleged
 
--------------------------------------------
 
[2] See also Smaland Beach Ass’n, Inc. v. Genova, 461 Mass. 214, 228 (2012) (judicial construction of federal rules of civil procedure applies to parallel Massachusetts rules, “absent compelling reasons to the contrary or significant differences in content” (quoting Strom v. American Honda Motor Co., 423 Mass. 330, 335 (1996), and Rollins Envtl. Servs., Inc., v. Superior Court, 368 Mass. 174, 180 (1975)).
 
                                                            -9-
 
misrepresentations, add nothing to the fraud and misrepresentation claims against these three defendants.
To succeed on their claim that Perry, ELJP, and the Guarantor are liable for aiding and abetting the commission of fraud or negligent misrepresentation, ERI must establish that: (1) some other party “committed the relevant tort,” (2) these defendants knew that the other party was “committing the tort,” and (3) these defendants “actively participated in or substantially assisted in [the] commission of the tort.” Massachusetts Port Auth. v. Turo, 487 Mass. 235, 244 (2021), quoting Go-Best Assets Ltd. v. Citizens Bank of Massachusetts, 463 Mass. 50, 64 (2012).
To succeed on its claim that these three defendants are liable for participating in a conspiracy on a “concerted action” theory, ERI must establish “an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement.” Bartle v. Berry, 80 Mass. App. Ct. 372, 383–384 (2011). In other words, this kind of conspiracy claim “is ‘akin to a theory of common law joint liability in tort.’ ” Greene v. Philip Morris USA Inc., 491 Mass. 866, 871 (2023), quoting Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994).
As discussed above, ERI has not mustered any evidence that Perry, ELJP, or the Guarantor actively participated in or substantially assisted any misrepresentations or any plan to make misrepresentations. These defendants are therefore entitled to summary judgment in their favor on the aiding and abetting claim and on the civil conspiracy claim. See generally Roman v. Trustees of Tufts College, 461 Mass. 707, 711 (2012) (“A nonmoving party’s failure to establish an essential element of her claim ‘renders all other facts immaterial’ and mandates summary judgment in favor of the moving party.”) (quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991)).
4. Chapter 93A Claim. The Court finds that Defendants cannot be held liable under G.L. c. 93A because the conduct that forms the basis for this claim did not occur “primarily and substantially within the commonwealth.” See G.L. c. 93A, § 11. This claim also fails as against the Guarantor, ELJP, and Perry for the additional reason that the underlying fraud or misrepresentation claims cannot be proven. Defendants are therefore entitled to summary judgment in their favor on Count Two.
 
                                                            -10-
 
4.1. Center of Gravity. The burden of proof is on the Defendants to prove that the conduct that constitutes the allegedly unfair or deceptive act or practice did not occur primarily and substantially in Massachusetts. See G.L. c. 93A, § 11; Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 470 & n.11 (2003). An unfair method of competition or unfair or deceptive act or practice occurred primarily and substantially in Mass. when “the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.” Kuwaiti Danish Computer, supra, at 473.
To determine the center of gravity, the court should look “only to the allegedly unscrupulous conduct” and consider all the relevant circumstances, include where the misconduct and where the loss occurred. Skyhook Wireless, Inc. v. Google, Inc., 86 Mass. App. Ct. 611, 622 (2014). In other words, “only the allegedly unfair and deceptive conduct may be considered: ‘[c]ontacts with Massachusetts that were neither unfair nor deceptive do not play a part in this assessment.’ ” Armstrong v. White Winston Select Asset Funds, LLC, 648 F.Supp.3d 230, 270 (D.Mass. 2022) (Dein, M.J.), quoting AECOM Tech. Servs. Inc. v. Mallinckrodt LLC, 117 F.Supp.3d 98, 106 (D.Mass. 2015) (Saris, C.J.).
There is no set formula for determining whether conduct that would violate c. 93A took place primarily and substantially in Massachusetts. Kuwaiti Danish Computer, supra, at 473. Where the relevant facts are not in dispute, this issue may be resolved on summary judgment. See Skyhook Wireless, 86 Mass. App. Ct. at 622–623.
Here, none of the allegedly unfair or deceptive conduct was centered in Massachusetts. Perry and some colleagues met with ERI representatives in Cambridge, Massachusetts, in March 2016. But the allegedly deceptive waterfall analysis was not created until April 2016. Although this spreadsheet was provided to ERI personnel in Massachusetts, it was created for the Borrowers by a vendor in New York using information provided by employees of the Borrowers working in Georgia or elsewhere outside of Massachusetts, and sent electronically from a location outside of Massachusetts.
Turning to the alleged misrepresentation based on withholding appraisals of and information about offers to purchase Mission Bay, none of that conduct took place in Massachusetts. The Borrowers’ staff worked in other states. Their alleged failure to provide complete disclosure about information known to the Borrowers about Mission Bay’s value therefore took place outside of Massachusetts.
 
                                                            -11-
 
Furthermore, the Loan made by ERI was to fund a project in California, and by contract was to be repaid solely from distributions resulting from the future sale of projects outside of Massachusetts.
Although ERI experienced its claimed losses in Massachusetts, where it is located, “that factor alone does not suffice to bring this dispute within the ambit of c. 93A,” in light of the other circumstances discussed above. See Skyhook Wireless, 86 Mass. App. Ct. at 622–623; accord Renwood Winery, Inc. v. Landmark Label, Inc., No. 04-P-1402, 2005 WL 2757537, at *9 (Mass. App. Ct. Oct. 25, 2005) (unpublished rule 1:28 decision) (center of gravity of negligent misrepresentations was not in Massachusetts, even though defendant experienced some of its loss in Massachusetts).
Weighing all of these undisputed circumstances, the Court concludes that the center of gravity of the defendants’ alleged unfair or deceptive conduct was outside of Massachusetts, and therefore does not implicate and cannot give rise to a claim under G.L. c. 93A, § 11. Id.
4.2. Underlying Claims. The c. 93A claim would fail as against Perry, ELJP, and the Guarantor in any case.
ERI contends that these three defendants committed unfair or deceptive acts by committing or participating in fraud or negligent misrepresentation. Either fraud or negligent misrepresentation of material facts will violate c. 93A if committed in trade or commerce. See, e.g., Quinlan v. Clasby, 71 Mass. App. Ct. 97, 102, rev. denied, 451 Mass. 1103 (2008); Nota Constr. Corp. v. Keyes Assocs., Inc., 45 Mass. App. Ct. 15, 21 (1998).
But, as discussed above, the summary judgment record establishes that Perry, ELJP, and the Guarantor did not commit or participate in committing any fraud or negligent misrepresentation. This dooms the c. 93A claim against them.
Where (as here) a claim under c. 93A is “wholly derivative” of a tort claim, and the complaint does not plausibly suggest that defendants committed a tort, the complaint also fails to state a claim that the defendants engaged in an unfair or deceptive act or practice that violates c. 93A. See Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B., 62 Mass. App. Ct. 34, 40-41 (2004) (where c. 93A claim is “wholly derivative” of tortious interference claim, evidence insufficient to establish that claim is likewise insufficient to establish violation of c. 93A); see also Dulgarian v. Stone, 420 Mass. 843, 853 (1995) (where c. 93A claim was based entirely on alleged defamation, and challenged statements did not
 
                                                            -12-
 
support cause of action for defamation, they also did not support cause of action under c. 93A).
Since the c. 93A claim against Perry, ELJP, and the Guarantor is “solely based” on an “underlying claim for common law fraud” or negligent misrepresentation, and those claims fail as a matter of law, it necessarily follows that the c. 93A claim against these defendants also fails as a matter of law. Macoviak v. Chase Home Mortgage Corp., 40 Mass. App. Ct. 755, 760, rev. denied, 423 Mass. 1109 (1996); see also Park Drive Towing, Inc. v. City of Revere, 442 Mass. 80, 86 (2004) (where c. 93A claim is “derivative of” breach of contract claim, and plaintiff could not show it had any contract with defendant, the c. 93A claim “must also fail”).
5. Claim to Enforce Guaranty. The Guarantor is not entitled to summary judgment as to Count Three, which seeks to enforce the Guaranty. As noted above, the Guarantor is liable for losses resulting from fraud by the Borrowers or the Guarantor. Since ERI has a viable claim for fraud against the Borrowers, it continues to have a viable claim to enforce the Guaranty. ERI is not entitled to partial summary judgment as to liability under the Guaranty because its fraud claim against the Borrowers cannot be resolved as a matter of law.
ERI will have to prove that the Borrowers engaged in intentional fraud, and not merely negligent misrepresentation, in order to collect against the Guarantor. The Guaranty, which says that it is governed by Massachusetts law, makes the Guarantor liable for losses incurred by ERI due “fraud by Borrowers.” It does not make the Guarantor liable for losses resulting from negligent misrepresentation.
Under Massachusetts law, the terms fraud, deceit, and intentional misrepresentation all mean the same thing. See Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 605 (2007).
But negligent misrepresentation and fraud are two completely different theories of liability. See Cumis Ins. Society, 455 Mass. at 476. As noted above, the former requires proof of negligence, that is a failure to exercise “reasonable care or competence” in obtaining or conveying information. Id. at 471–472 (2009), quoting Restatement (Second) of Torts § 552 (1977). In contrast, and also as noted above, fraud involves a “misrepresentation of an existing fact made with knowledge of the falsity of the misrepresentation or with reckless disregard of
 
                                                            -13-
 
the actual facts.” Christian, 400 Mass. at 764 (1987). In other words, it involves either an intent to deceive or recklessness.
If conduct is negligent then it cannot also be intentional or reckless; the difference between intentional or reckless conduct and negligence “is a difference in kind and not in degree.” See Sabatinelli v. Butler, 363 Mass. 565, 567 (1973); accord Waters v. Blackshear, 412 Mass. 589, 590 (1992) (“Intentional conduct cannot be negligent conduct and … negligent conduct cannot be intentional conduct.”); Hanover Ins. Group, Inc. v. Raw Seafoods, Inc., 91 Mass. App. Ct. 401, 408 (2017) (“Intentional and negligent conduct are mutually exclusive.”).
6. Claim under Promissory Note. Neither side is entitled to summary judgment with respect to the claim in Count Four against the Borrowers to enforce their promissory note.
The Borrowers rely on § 9 of the Loan Agreement, which is the non-recourse provision stating that ERI’s sole recourse is limited to the Borrowers’ right, title, and interest in future distributions by the Fund.
But such a non-recourse provision, limiting recovery to specified assets, is only enforceable “absent fraud.” First Eastern Bank, N.A. v. Jones, 413 Mass. 654, 662 (1992); Federal Dep. Ins. Corp. v. Porter, 46 Mass. App. Ct. 241, 245 (1999).
7. Unjust Enrichment Claim. Count Five is a claim “for money had and received and for unjust enrichment.”
Those are two different ways of saying the same thing. “An action for money had and received lies to recover money which should not in justice be retained by the defendant and which in equity and good conscience should be returned to the plaintiff.” Rabinowitz v. People's Nat. Bank, 235 Mass. 102, 103 (1920). A claim for unjust enrichment has the same elements, except that it is not limited to enrichment by money or its equivalent. See Jelmoli Holding, Inc. v. Raymond James Fin. Services, Inc., 470 F.3d 14, 17 n.2 (1st Cir. 2006) (applying Massachusetts law). “Money had and received was originally an equitable claim for unjust enrichment specific to money and credit. The current doctrine of unjust enrichment is identical and applies equally.” Shea v. Cameron, 92 Mass. App. Ct. 731, 740 n.9 (2019).
Under the circumstances of this case, ERI’s claim for unjust enrichment adds nothing to its claim against the Borrowers for fraud. If ERI can prove fraud, then (as discussed above) the non-recourse provision will not be enforceable
 
                                                            -14-
 
and ERI will be entitled to recover what the remaining principal and interest due under the Loan Agreement from the Borrowers or from the Guarantor. But if it cannot prove fraud, then there would be nothing unjust about ERI being limited to its contractual rights and not being able to recover those amounts. See Community Builders, Inc. v. Indian Motorcycle Assocs., Inc,, 44 Mass. App. Ct. 537, 560 (1998); see also Pierce v. Christmas Tree Shops, Inc., 429 Mass. 91, 94 n.5 (1999) (insurer was not unjustly enriched by recouping, in manner provided by contractual subrogation clause, portion of settlement paid to insured).
ERI may not seek unjust enrichment damages against the Borrowers, the Guarantor, ELJP, or Perry, because the parties’ rights and obligations are defined by valid contracts. See Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 641 (2013); Boston Med. Ctr. Corp. v. Secretary of Executive Office of Health & Human Servs., 463 Mass. 447, 467 (2012).
Since the subjects that are in dispute in this case are governed by the Loan Agreement and the Guaranty, ERI may not seek additional compensation under an unjust enrichment theory. See Zarum v. Brass Mill Materials Corp., 334 Mass. 81, 85 (1956) (plaintiff may not seek recovery on principles of unjust enrichment where valid contract covers subject matter of dispute).
Though ERI did not contract with Perry or EJLP, that does not matter. “The rule barring unjust enrichment” where “a valid contract covers the subject matter of the parties’ dispute” applies not only “when a plaintiff seeks to recover from the party with whom he expressly contracted but also … when a plaintiff seeks to recover from a third party to the contract who benefited from its performance.” ConocoPhillips Co. v. Koopmann, 542 S.W.3d 643, 663–64 (Tex. App. 2016), aff'd on other grounds, 547 S.W.3d 858 (Tex. 2018).
8. Claim as to Allegedly Undistributed Amounts. Finally, the Defendants are entitled to summary judgment in their favor on Count Six, which alleges that the Fund failed to distribute the full amounts that were owed to the Borrowers, and that as a result ERI did not receive everything that it should have.
The summary judgment record shows that ERI cannot muster any evidence to support this claim. It establishes that Fund did not hold any distributable monies back from the Borrowers, and that the Borrowers paid over to ERI the full amounts that they received from the Fund.
In its memorandum, ERI tries to argue a different claim against a different party. It now contends that the Integral Sponsor that owned part of Mission
 
                                                            -15-
 
Bay, and another unidentified Integral entity that owned part of the Midtown project, improperly set-off expenses against proceeds from the sale of those projects and therefore distributed far less to the Fund than they should have.
But neither of the entities that ERI now accuses of wrongdoing (the Integral Sponsor and the partial owner of the Midtown project) is a defendant in this action. ERI may not recover from any of the defendants in this case based on alleged wrongdoing by separate legal entities. See generally Scott, 450 Mass. at 766 (separate corporations or LLCs are generally “regarded as separate and distinct entities,” even if there are “relationships between or among them.”).
ORDERS
Defendants’ motion for summary judgment is allowed in part with respect to (a) the claims in Count One for fraud and negligent misrepresentation against Integral Development LLC (the “Guarantor”), ELJP Real Estate, LLC (“ELJP”), Egbert L.J. Perry (“Perry”), and Integral Investment Fund I, LP, (b) the claim in Count One for conversion, in its entirety, (c) the claims in Count One for aiding and abetting fraud and for civil conspiracy against the Guarantor, ELJP, and Perry, (d) the claim in Count Two under G.L. c. 93A, § 11, (e) the claim in Count Five for money had and received or unjust enrichment, and (f) the claim in Count Six to recover allegedly undistributed amounts.
Defendants’ motion for summary judgment is denied in part with respect to (a) the claims in Count One for fraud and negligent misrepresentation against Integral Fund I Investor, LLC, and IIf1 GP, LLC (the “Borrowers”), (b) the claim in Count Three to enforce the guaranty against the Guarantor, (c) the claim in Count Four to enforce the promissory note against the Borrowers
Plaintiff’s cross-motion for partial summary judgment is denied.